
**Cooley**
GODWARD KRONISH LLP

Donald K. Stern
(617) 937-2321
dstern@cooley.com

July 23, 2009

***SENT VIA EMAIL stephanie.siegmann@usdoj.gov***

B. Stephanie Siegmann
Assistant United States Attorney
United States Attorney's Office
Moakley Courthouse
One Courthouse Way, Suite 9200
Boston, MA 02210

RE: **United States v. Zhen Zhou Wu a/k/a Alex Wu, et al.**
    **Criminal Action No. 08-10386-PBS**

Dear Stephanie:

This letter is sent on behalf of the individual defendants in the above case. While I represent Zhen Zhou Wu, I have consulted with Mr. Kiley (who represents Yufeng Wei) and Mr. McMahon (who represents Bo Li) and they join in this letter.

The government has, as part of the automatic discovery process, provided copies of a very large number of documents in electronic form. Because of the sheer volume of the material and, in some cases, the ambiguity and vagueness of the government's allegations set forth in the First Superseding Indictment, we need a more tailored and specific identification of those documents that are relevant to this prosecution in order to properly defend our clients. In addition, as outlined below, the grand jury's charges are based upon and arise out of a complex statutory and regulatory scheme. Our clients require certain other materials and documents to understand and defend against those charges.

A. **Documents and Materials Related to Export Classification and Licensing of Items Allegedly Controlled Under the ITAR**

Counts one and two of the First Superseding Indictment allege that two specific power amplifiers, identified as M/A-Com Power Amplifiers, bearing part numbers MAAPGM0038 and MAAPGM0034 were designated as defense articles at the time of the alleged exports. For each of these items, referred to below as "the alleged defense articles," the following documents are required:



B. Stephanie Siegmann
July 23, 2009
Page Two

    1.    All documents generated by the Departments of State, Commerce, Defense or any other department or agency (including the CIA, Energy or NSA) of the United States[1] that participated in or was consulted during the course of the State Department's preparing and rendering the commodity jurisdiction determinations with respect to the alleged defense articles, including correspondence among and between these departments.

    2.    All documents submitted by the manufacturer of the alleged defense articles in connection with the manufacturer's request for a commodity jurisdiction determination and all documents subsequently obtained from the manufacturer in connection with the State Department's, or any other department or agency of the United States, consideration of the manufacturer's request.

    3.    All documents solicited or obtained by the State Department, or by any other department or agency of the United States, from consultants, experts, competitors, market analysts, manufacturers, or end users concerning the alleged defense articles, in connection with commodity jurisdiction determination.

    4.    All documents concerning whether any of the alleged defense articles were specifically designed, modified or configured for a military application, including any specifications, design requirements or other technical parameters issued or prepared by any agency or department of the United States, whether these specifications are included in contracts for the design of the devices, for their purchasing and supply, or otherwise.

    5.    All documents recording or evidencing the design, performance, function, form, or fit distinctions between the four devices that the State Department determined to be subject to its jurisdiction (including the alleged defense articles) and the three devices that it determined not to be subject to its jurisdiction but that might be subject to export control by the Department of Commerce.

    6.    All documents identifying the specific article listed in paragraph (a) or (b) of category XI of the United States Munitions List for which the alleged defense articles are a component, part, accessory or attachment.

    7.    All documents concerning whether the alleged defense articles as of January 2004, or at any later time, had or currently have a predominately military or predominantly civil application, including documents related to (a) the number, variety and predominance of civil applications for the alleged defense article, (b) the nature, function and capability of the civil applications, and (c) the nature, functions and capability of the military applications.

---

[1] This discovery letter is directed to include _all_ agencies of the U.S. government and any documents in the possession or control of any agency in a foreign government assisting and/or co-operating in this prosecution.



B. Stephanie Siegmann
July 23, 2009
Page Three

8. All documents concerning whether the alleged defense articles as of January 2004, or at any later time, had or currently have performance equivalent to articles used for civil applications, including documents related to the form, fit, or function of the alleged items and of comparable civil items, and including specifications of devices to which the alleged defense articles were compared in the course of the commodity jurisdiction determination.

9. All documents concerning whether the alleged items as of January 2004, or at any later time, had or have "significant military or intelligence applications such that it is necessary to control their export."

10. All documents concerning whether any of the alleged items as of January 2004, or at any later time, were or are in "normal commercial use" at the time of the export.

11. Any other documents concerning the export classification of the alleged defense articles, including but not limited to notes or memoranda reflecting or recording oral advice provided to an exporter, manufacturer or any other party, by any representative or employee of a Untied States agency.

12. All documents recording that the President of the United States or his designee has reviewed the status of the devices identified in the first two counts of the indictment and has continued or renewed their designation as items to be included on the United States Munitions List.

13. All documents recording the inclusion on the United States Munitions List of the devices identified in the first two counts of the indictment and, if either or both items has or have been removed from the list, all documents recording or concerning the removal.

14. Any other documents presented to the grand jury or upon which the government relies to support the charges that the alleged defense articles are designated on the United States Munitions List.

15. All documents evidencing the availability of the alleged defense articles from suppliers not subject to the jurisdiction of the United States.

**B.   Documents and Materials Related to Export Classification and Licensing of Items Allegedly Controlled Under the EAR**

The First Superseding Indictment alleges that certain Intersil digital-to-analog converters were, at the time of the alleged exports, classified under Export Control Classification Number ("ECCN") 3A001. For these items, referred to below as "the alleged 3A001 items," the following documents and materials are required:


**Cooley**
GODWARD KRONISH LLP

B. Stephanie Siegmann
July 23, 2009
Page Four

    16.    Any commodity classification requests or similar request filed with or submitted to the Department of Commerce, formally or informally, by an exporter, manufacturer or any other party concerning the alleged 3A001 items.

    17.    All commodity classification determinations or similar opinions or rulings, including informal advice or guidance, issued by the Department of Commerce or any other agency of the United States government concerning the alleged 3A001 items and any other documents relied upon for the allegation that the alleged items are classified on the Commerce Control List ("CCL") under ECCN 3A001, including any documents showing the specific sub-category which the government alleges applies to the alleged 3A001 items.

    18.    All licensing determinations issued by the Department of Commerce concerning the alleged 3A001 items and all documents related to those determinations, including internal and external correspondence, memoranda, and notes.

    19.    All documents indicating the number of export license applications requesting authorization to export to China items classified under ECCN 3A001 that were filed, and the number of such applications that were granted, during 2004.

    20.    Any other documents related to the export classification of the alleged 3A001 items, including but not limited to notes or memoranda reflecting or recording oral advice provided to an exporter, manufacturer or any other party, by any representative or employee of a U.S. government agency.

    21.    All documents showing whether an export license was required in order to export or re-export the alleged items to any of the end-users of the alleged 3A001 items <u>due to the identity of the end-user</u>, including documents showing that the end-user was identified on the Entity List, the Denied Persons List or Unverified List at the time of the alleged exports.

    22.    All documents showing whether an export license was required in order to export or re-export the alleged 3A001 items to any of the end-users <u>due to the end-use</u> of the alleged 3A001 item.

    23.    Any other documents presented to the grand jury or upon which the government relies to support the charges that the alleged 3A001 items articles are classified on the CCL under ECCN 3A001.

    24.    All documents evidencing the availability of the alleged 3A001 items from suppliers not subject to the jurisdiction of the United States.



B. Stephanie Siegmann
July 23, 2009
Page Five

### C. Shipping Documents

25. With respect to each and every transaction and/or item, article, device, or part referred to in the First Superseding Indictment ("the alleged items"), please provide all documents, including airway bills or bills of lading, shipper's letters of instruction, shipper's export declarations, packing lists, UPS documents, purchase orders, internal order management records, and warehouse and inventory records, and payment records, checks, and receipts.

26. All documents tending to show that each shipment of the alleged items was intended for ultimate delivery and that the alleged items themselves intended for use in the People's Republic of China.

27. All documents tending to show that each and every or any of the defendants made, or directed that another make, any of the shipments of any of the devices identified in the first three counts of the indictment; that any of these shipments was shipped, either directly or indirectly, to a person or entity in the People's Republic of China; or that the devices themselves arrived in and were available for use by persons in the People's Republic of China.

### C. Additional Documents

28. All documents relied upon by the government to support its allegations that Zhen Zhou Wu, Yufeng Wei and/or Bo Li knew, as of April and May, 2004, that the exporting of the alleged items, or any of them, from the United States to Hong Kong or the People's Republic of China without a license to do so from the State Department or the Commerce Department was unlawful.

29. Attachments 1 through 10 referred to in the Report of Special Agent Hayden, dated October 24, 2007, a copy of which was enclosed in the government's January 16, 2009 letter.

30. All documents reflecting or indicating the identity of the person or persons who prepared the SED chart reviewing SEDs submitted between 1/1/03 and 12/05/08 referred to and enclosed in the government's January 16, 2009 discovery letter.

31. The End Use Statement of Chitron, dated October 21, 2008 referenced in the government's January 16, 2009 discovery letter.

32. All documents indicating the identity of the person or persons who prepared the spreadsheet listing products shipped to China, including Part No. JANTX2 and 4150 on 11/16/06, and all documents that support the entries contained in that spreadsheet and enclosed in the government's January 16, 2009 discovery letter.



B. Stephanie Siegmann
July 23, 2009
Page Six

33.     Copies of all documents received from Stephen Gigliotti, whether in electronic or hard copy form.

34.     All records of interviews, reports, statements, or memos made by or concerning Stephen Gigliotti.

35.     Bank records and any other records of Rochester Electronics, Inc. concerning the alleged items identified in count three of the indictment.

36.     All immigration records of Zhen Zhou Wu.

37.     All immigration records of Yufeng (Annie) Wei.

38.     All immigration records of Bo Li.

39.     Any and all interview documentation that exists with regard to the July 27, 2008 interview of Yufeng (Annie) Wei by agents of the United States Customs and Border Protection at Newark Airport in New Jersey as referenced in Paragraph 26 of the Criminal Complaint.

40.     In the electronic document production produced by the government in the range of CHITRON-00000001 - 00026224, documents are missing. This production has a gap between CHITRON-00012204 and CHITRON-00013234, Please produce a CD containing copies of each of the documents within that missing range or clarify same.

41.     All documents upon which the government relies to support the allegations to the effect that Chitron Electronics Corporation is a "front" corporation for Shenzhen Chitron Electronics Limited or that either or both of these corporations is a "front" or the alter ego for or of Zhen Zhou Wu.

42.     All documents upon which the government relies to support its allegation that Zhen Zhou Wu is the owner of both Chitron Electronics Corporation and Shenzhen Chitron Electronics Limited.

43.     All documents upon which the government relies to support the allegations of the first three counts of the First Superseding Indictment that Zhen Zhou Wu himself, willfully and with the knowledge of and purpose to violate the cited statutes and regulations, exported by UPS shipment from the United States to the People's Republic of China, directly or through freight forwarders in Hong Kong or in any other manner using any other means, the alleged items.

44.     All documents upon which the government relies to support the allegations of the first three counts of the indictment that Yufeng (Annie) Wei herself, willfully and with the knowledge of and purpose to violate the cited statutes and regulations, exported by UPS



B. Stephanie Siegmann
July 23, 2009
Page Seven

shipment from the United States to the People's Republic of China, directly or through freight forwarders in Hong Kong or in any other manner using any other means, the alleged items.

45. All documents and statements made by or concerning Maylin Atkinson Murphy, other than the immunity agreement letter that the government has previously produced.

46. The grand jury testimony of Special Agent Hayden.

47. Any documents and any other evidence concerning Special Agent Hayden's statement in paragraph 22 of his July 9, 2009 affidavit that ". . . Chitron-Shenzhen controlled all aspects of Chitron-US and thereby caused the alleged exports charged in Counts one through five . . . "

48. All documents and other evidence concerning the statement in Special Agent Hayden's July 9, 2009 affidavit, at paragraph 12, no. 4, that ". . . Chitron is one cohesive company whose U.S. operations were always closely controlled by Chitron-Shenzhen."

49. All documents and other evidence concerning Special Agent Hayden's July 9, 2009 affidavit, at paragraph 18, that his "conclusion is that Chitron-US and Chitron-Shenzhen were the same company . . . "

50. The grand jury minutes and exhibits (other than the minutes of the testimony of REDACTED which the government has already produced).

51. All documents that the government believes tend to support each and every factual allegation in the First Superseding Indictment.

Sincerely,

Donald K. Stern

DKS/smw

cc: Thomas Kiley, Esq.
    George McMahon, Esq.

44043 v1/BN